UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **AMERRISQUE TABLADA,** | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | )   Civil Action No. 1:25-CV-00284 |
| | ) |
| **ROCKET MORTGAGE; SEVEN DEUCE, LLC; AND GINNIE MAE II,** | ) |
| | ) |
| DEFENDANTS. | ) |

**DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

The Defendant, Rocket Mortgage, LLC, submits this supplemental memorandum of law in opposition to the Plaintiff, Amerrisque Tablada's, Motion for Preliminary Injunction following oral argument on June 18, where it was revealed that Mr. Tablada's complaint includes a claim under the Real Estate Settlement Practices Act (RESPA). This Court should deny Mr. Tablada's motion because Mr. Tablada has not met his burden to show a reasonable likelihood of success on the merits to support his RESPA or breach of contract claims; neither has Mr. Tablada met his burden to show that recording the foreclosure deed for a sale that occurred January 24, 2025 will cause him irreparable harm. In support of this memorandum, Rocket Mortgage submits the Affidavit of Melanie Czartoryski, Loss Mitigation Officer of Rocket Mortgage and the Affidavit of Ashley Torres, Esq. of Brock and Scott, PLLC.

**RELEVANT FACTS**

Mr. Tablada was the owner of the mortgaged premises known as 63 West Shannock Road of the Town of Richmond, which was foreclosed at public auction on January 24, 2025. (*See Tablada Aff.* ¶¶ 2, 71; Ex. B; *Torres Aff.*, ¶ 11). On November 9, 2021 the Mortgage, insured by the Federal Housing Administration (FHA) as a part of the U.S. Department of Housing and Urban

Development (HUD), was assigned to Rocket Mortgage by publicly recorded assignment. (*See Tablada Aff.* ¶ 5; *Czartoryski Aff.*, ¶¶ 1, 6, Ex. C). On December 2, 2023, HUD granted a partial claims mortgage in the principal amount of $54,743.90, which secures a separate promissory note in the same amount. (*See Tablada Aff.* ¶ 42; *Czartoryski Aff.*, Ex. D). The Partial Claims Mortgage was applied to Mr. Tablada's mortgage loan account on December 19, 2023 and reinstated the loan, curing a non-payment default that occurred on or about December 2021. (*See Czartoryski Aff.*, ¶7).

However, on May 1, 2024, Mr. Tablada defaulted under the terms of the Note and Mortgage, again, for failure to make timely monthly payments. (*See id.*, Ex. E). On May 8, 2024, Rocket Mortgage mailed a late payment letter, advising Mr. Tablada of the missed payment and his options to apply for loss mitigation. (*See id.*, ¶ 11, Ex. H). Thereafter, from May 22, 2024 to January 9, 2025, Rocket Mortgage mailed periodic letters, each advising Mr. Tablada of his options to apply for loss mitigation. (*See id.*, ¶ 11, Ex. H).

Rocket Mortgage also mailed a contractual default notice dated August 22, 2024, which provides a specified date of October 11, 2024 to cure the default by making payment of $8,411.30, and that failure to cure may result in acceleration and sale of the Subject Property. (*See id.*, ¶ 8, Ex. E). The contractual Default Notice also states that Mr. Tablada has the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale, as proscribed by the terms of the Mortgage. (*See id.*). Along with the Default Notice, Rocket Mortgage mailed a notice of mediation conference, pursuant to R.I.G.L. § 34-27-3.2, now § 34-27-9. (*See id.*, ¶ 9, Ex. F). A certificate of compliance with this statutory requirement was issued on November 12, 2024 after Mr. Tablada failed to respond to the mediator's requests to appear for a mediation conference. (*See id.*, ¶ 10, Ex. G).

- 2 -

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                              1:25-cv-00284

Rocket Mortgage referred the loan to its counsel, Brock and Scott, PLLC, who scheduled and conducted the foreclosure sale. (*See Torres Aff.*, ¶ 5). The Firm mailed notices of sale to Mr. Tablada at both the Subject Property and the address listed with the Office of the Tax Assessor for the Town of Richmond on November 27, 2024. (*See id.*, ¶ 7, Ex. 1 – Notice of Sale). Notice of the January 2025 Sale was published for three successive weeks, beginning on January 2nd and ending on January 16th. (*See id.*, ¶ 9, Ex. 2 - Publications). The Subject Property's valuation is estimated to be about $367,600.00 according to the local Tax Assessor. (*See id.*, ¶ 10, Ex. 3 – Tax Assessor Property Card).

After competitive bidding at the auction sale, conducted by the Firm's licensed auctioneer, the Subject Property was sold for $329,000.00 to a third party, Benjamin Ricci. (*See id.*, ¶ 11-12). Mr. Ricci subsequently refused to honor his bid after his counsel advised that he would not close on the sale due to the Borrower's threats of litigation. (*See id.*, ¶ 13). As a result, the Firm contracted with the next highest, willing bidder, Seven Deuce, LLC, for its bid of $300,000.00. (*See id.*, ¶ 15).

Upon receipt of numerous qualified written requests, Rocket Mortgage mailed five acknowledgement letters and four formal responses to Mr. Tablada's counsel. (*Czartoryski Aff.*, Ex. H). The responses each addressed the allegations made by Mr. Tablada's counsel and provided supporting documentation to establish Rocket Mortgage's authority to foreclose the Mortgage. (*See id.*). In response, Tablada filed this action and recorded a Notice of Lis Pendens (ECF 2) with the Town of Richmond Land Evidence Records in Book 375, Page 693 on June 17, 2025. A hearing on Plaintiff's Motion for Temporary Restraining Order was held on June 18, where this Court granted a brief restraining order and scheduled this hearing for preliminary injunction to address the RESPA claims alleged during oral argument.

- 3 -

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                                                 1:25-cv-00284

## STANDARD OF REVIEW

The legal standard for preliminary injunction mirrors the standard for a temporary restraining order. (*New York v. Trump*, 764 F.Supp.3d 46, 46 (D.R.I. Jan. 31, 2025)). In deciding on a motion for preliminary injunction, the hearing justice must weigh the following factors: "(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." (*Planned Parenthood League of Mass. V. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981)).

## ARGUMENT

Mr. Tablada has not established a reasonable likelihood of success on the merits to support the vague, conclusory RESPA claim(s) contained in the complaint because he was previously offered loss mitigation and has never submitted a completed application. Neither has Mr. Tablada established a reasonable likelihood of success on the merits for any of the conclusory claims for breach of contract because (1) the mortgage does not contain any contractual provision that requires compliance with the Secretary of Housing and Urban Development's (HUD) federal regulations; (2) there are no plausible facts alleged by Mr. Tablada that would infer noncompliance with the statute governing nonjudicial foreclosure by statutory power of sale, pursuant to R.I.G.L. § 34-27-4; (3) there are no plausible facts alleged by Mr. Tablada that would infer noncompliance with the notice provisions contained in the mortgage contract. Lastly, Tablada has not provided any plausible evidence that the recording of the foreclosure deed would cause irreparable harm because the foreclosure sale took place approximately five months ago.

- 4 -

Def's Opp'n to Pl's Mot. for Prelim. Inj.　　　　　　　　　　　　　　　　　　1:25-cv-00284

1. **Mr. Tablada has not met his burden of proof to establish a reasonable likelihood of success on the merits of proving violation under RESPA because he was previously offered loss mitigation and has never submitted a completed application.**

Mr. Tablada has not provided plausible facts to support a RESPA claim[1] and the uncontroverted facts demonstrate that Rocket Mortgage was in compliance with RESPA at the time of foreclosure. First, Tablada references 12 C.F.R. § 1024.39, which requires servicers "to make a good faith effort to contact borrowers to inform them of loss mitigation options." (*See Compl.* ¶¶ 34-36; *Mangum v. First Reliance Bank*, No. 4:16-CV-02214-RBH, 2017 WL 1062534 at *2 (D.S.C. Mar. 21, 2017)). Tablada never alleges any facts to establish a violation under RESPA, but instead merely alludes to a conclusory presumption that Rocket Mortgage must have failed to comply. (*See Tablada Aff.*, ¶¶ 34-36). While Tablada argues that strict compliance with 12 C.F.R. § 1024.39 is required to exercise the statutory power of sale, he cites no specific contractual or statutory provision. (*See Compl.* ¶¶ 57-58).

The only restrictive provision in RESPA exists under 12 C.F.R. § 1024.41, which prohibits initiation of a foreclosure proceeding upon receipt of a complete loss mitigation application, unless certain exceptions apply. (12 C.F.R. § 1024.41(f)-(g)). However, "[n]othing in 1024.41 imposes a duty of a servicer to provide any borrower with any specific loss mitigation option. Nothing in 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law." (12 C.F.R. § 1024.41(a)). These requirements do not apply in the event that "the servicer has previously complied with the requirements of this section for a

---

[1] No separate cause of action under RESPA has been filed in the Complaint. To the extent that one may be alleged under Breach of Contract, Rocket Mortgage refers to the same analysis used to reject strict compliance under the HUD regulations.

- 5 -

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                          1:25-cv-00284

complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." (*See* 12 C.F.R. § 1024.41(i)). Courts have held that "a borrower may not bring an action for violation of the loss mitigation rule if that borrower has previously availed [himself or] herself of the loss mitigation process." (*See Mangum*, 2017 WL 1062534, at *3 (citing *Houle v. Green Tree Servicing, LLC*, No. 14-cv-14654, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015); *Wentzell v. JPMorgan Chase Bank, Nat'l Assoc.*, 627 Fed.Appx. 314, 318 n.4 (5th Cir. 2015))).

Here, Rocket Mortgage mailed a late payment letter on May 8, 2024, advising Mr. Tablada of the missed payment for May 1, 2024 and his options to apply for loss mitigation. (*See Czartoryski Aff.*, ¶ 11, Ex. H). This communication satisfies the written notice requirement contained in Section 1024.39 because it was sent "no later than the 45th day of the borrower's delinquency…" (*See* 12 C.F.R. § 1024.39(b)). Tablada does not allege any specific factual allegations to indicate that the notice was somehow defective, but instead implies that Rocket Mortgage may not have complied attempting to avoid his own burden of proof. (*See Compl.*, ¶ 28(d)). Attempts to contact Tablada continued with periodic letters mailed between May 22, 2024 to January 9, 2025[2], continuing to establish a good faith effort to establish live contact with Mr. Tablada of his options to apply for loss mitigation. (*See Czartoryski Aff.*, ¶ 11, Ex. H). Contrary to Tablada's claim that the regulation requires "phone or in-person" communications, Section 1024.39 only requires that a servicer "establish or make good faith efforts to establish live contact

---

[2] Rocket Mortgage's Letter Logs indicate the following notices were mailed to Tablada: (1) a second late payment letter dated May 22, 2024; (2) a third late payment letter dated May 28, 2024; (3) an FHA delinquency letter dated June 4, 2024; (4) an FHA brochure dated June 4, 2024; (5) an Application for Success letter dated June 8, 2024; (6) a fourth late payment letter dated June 10, 2024; (7) a fifth late payment letter dated June 21, 2024; (8) a sixth late payment letter dated June 24, 2024; (9) a seventh late payment letter dated July 9, 2024; (10) an eighth late payment letter dated July 23, 2024; (11) a home options letter dated July 26, 2024; (12) an avoid foreclosure letter dated August 6, 2024. In addition, Rocket Mortgage sent emails (EML) and short message servicing (SMS) texts through January 9, 2025.

with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent." (*See Compl.*, ¶ 28(c); 12 C.F.R. § 1024.39(a)). Rocket Mortgage never received any loss mitigation application despite these efforts.

Furthermore, Tablada cannot bring an action for violation under RESPA because he "previously availed [himself or] herself of the loss mitigation process[,]" but chose not to participate. (*See Mangum*, 2017 WL 1062534, at *3). Efforts to establish live contact can also be inferred through compliance with the Rhode Island Mediation Conference statute, pursuant to R.I.G.L. § 34-27-9 (formerly § 34-27-3.2). Here, Rocket Mortgage mailed notices in compliance with the Mediation Statute on August 22, 2024, providing notice of Tablada's right to participate in mediation with an independent, HUD-approved mediator to discuss loss mitigation options in a live telephone conference. (*See Czartoryski Aff.*, Ex. F). However, Tablada refused to participate, despite the mediator's repeated attempts to contact him. (*See id.*, Ex. G). Not only does this evidence show Rocket Mortgage's good faith attempt to make live contact, but it also indicates Tablada's disinterest in negotiating any loss mitigation options.

Neither does the Complaint or Tablada's affidavit allege any facts that he ever submitted a loss mitigation application. (*See generally Compl.*; *Tablada Aff.*). To invoke the restriction on foreclosure, Tablada would have had to submit a completed loss mitigation application "45 days or more before a foreclosure sale…" (*See* 12 C.F.R. § 1024.41(b)(2)(i)). Even then, the restriction would not have applied because "the mortgage loan obligation [was] more than 120 days delinquent" when notice of the January 2025 foreclosure sale was mailed. (*See* 12 C.F.R. § 1024.41(f)(1)(i)). To be precise, the May 2024 default was 210 days delinquent by the time Rocket Mortgage's counsel mailed the November 27, 2024 notice of sale. (*See Czartoryski Aff.*, Ex E;

*Torres Aff.*, Ex. A). As a result, the only restrictive provision under RESPA clearly would not apply to prevent the January 2025 foreclosure sale and Tablada has not met his burden to establish a likelihood of success on the merits. (*See* 12 C.F.R. § 1024.41(f)-(g)).

2. **Mr. Tablada has not met his burden of proof to establish a reasonable likelihood of success on the merits of proving breach of contract because the Mortgage does not contain any contractual provision that requires compliance with HUD federal regulations.**

Mr. Tablada cannot challenge the January 2025 foreclosure sale for failure to comply with HUD regulations, unless the terms of the Mortgage so provide. (*See Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-136 WES, 2018 WL 1083581 (D.R.I. Feb. 27, 2018)). First, Tablada alleges violations under the HUD face-to-face regulations governed by (*See Compl.* ¶¶ 48-50; 24 C.F.R. § 203.604). Second, Tablada alludes to 24 C.F.R. § 203.605, which establishes specific loss mitigation evaluation procedures for loan servicers. (*See Compl.* ¶ 31; 24 C.F.R. § 203.605(a)). Third, Tablada references 24 C.F.R. § 203.501, which mandates comparative evaluation of different loss mitigation options when reviewing a mortgagor's application. (*See Compl.* ¶ 32; 24 C.F.R. § 203.501).

Here, the Mortgage is distinguishable from the standard HUD mortgage referenced in *Dan-Harry* because it does not contain the express contractual provision that "unambiguously requires compliance with the HUD regulations, including 24 C.F.R. § 203.604(b), as a condition precedent to foreclosure. (*See id.*, at *1; compare with* ECF 5-3 at 14, ¶ 22). Without an express contractual provision similar to the paragraph 9(d) of the standard FHA mortgage, this Court should apply the holding in *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975 (R.I. 2017). In *Miller*, the Rhode Island Supreme Court held that there is no state-law cause of action for breach of a duty of good faith based on a mortgagee's failure to comply with federal regulations or to offer a loan modification. (*Id.* at 980-81).

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                           1:25-cv-00284

Even if the Mortgage required compliance with the HUD regulations, Rocket Mortgage is not required to conduct a face-to-face meeting because it does not have a physical branch or office within 200 miles of the mortgaged premises. (*See Czartoryski Aff.*, ¶ 13; 24 C.F.R. § 203.604(c)(2), (Nov. 6, 1997). Although the new regulations effective January 1, 2025 have removed this exemption, HUD extended the 200-mile exemption until July 1, 2025. (*See Dept. of Hous. and Urban Dev. Rules and Regulations*, 89 Fed. Reg. 92033-01, 2024 WL 4836866 (Nov. 21, 2024)). Thus, Tablada has not met his burden to establish a reasonable likelihood of success on the merits for his breach of contract claim.

3. **Mr. Tablada has not met his burden of proof to establish a reasonable likelihood of success on the merits of proving breach of contract because he alleges no plausible facts that would infer noncompliance with the statute governing nonjudicial foreclosure by statutory power of sale, pursuant to R.I.G.L. § 34-27-4.**

Rhode Island General Laws § 34-27-4(b) requires that notice of sale to an individual consumer mortgagor be mailed within thirty days "by certified mail return receipt requested at the address of the real estate and, if different, at the mortgagor's address listed with the tax assessor's office …" Subsection (a) of the statute also provides that notice of the sale be published for three successive weeks prior to the sale, with the first publication being at least 21 days prior to the sale, and the third publication being no fewer than 7 days prior to the sale but no more than 14 days prior to the sale.

Here, Mr. Tablada does not allege any plausible facts that would suggest that the notice of sale was mailed later than November 27th, which was 36 days prior to the first publication that ran on January 2, 2025 in compliance with subsection (b). (*See Torres Aff.*, ¶ 7-9, Ex. 1-2). Publications ran two additional weeks, January 9 and 16, leading up to the public auction sale held on January 24, 2025, which was eight days prior to the sale demonstrating compliance with subsection (a). (*See Torres Aff.*, ¶ 9). Likewise, Tablada does not allege any plausible facts that the publications

were outside of the timelines provided in subsection (a) of the statute. Although, he claims the notice of sale was mailed by certified mail, electronic return receipt requested, Tablada has not presented any plausible facts that would show how an electronic receipt is somehow inconsistent with the statutory language which only requires that the notice be mailed "certified mail return receipt requested…" (*See Compl.*, ¶¶ 67-68; R.I.G.L. § 34-27-4(b)). As a result, Tablada has not met his burden to establish a reasonable likelihood of success on the merits for his breach of contract claim.

4. **Mr. Tablada has not met his burden of proof to establish a reasonable likelihood of success on the merits of proving breach of contract because he alleges no plausible facts that would infer noncompliance with the notice provisions contained in the mortgage contract.**

The Rhode Island Supreme Court has held that "[a]s a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale." (*Woel v. Christiana Tr., as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17*, 228 A.3d 339, 345 (R.I. 2020)). More recently, in *Degasparre v. Fay Servicing, LLC*, the Supreme Court distinguished a valid notice in strict compliance with paragraph 22 from the invalid notice in *Woel*. (288 A.3d 146, 153-54 (R.I. 2023)).

Here, the Default Notice mirrors the contractual language contained in paragraph 22 of the Mortgage, including the right to reinstate after acceleration and the right to bring a court action. (*See* ECF 1-5; *Czartoryski Aff.*, ¶ 8, Ex. E). The Default Notice states that (a) the loan is in default for failure to pay amounts due, (b) to cure the default a payment of $8,411.30 must be made, (c) by October 11, 2024, and (d) failure to cure the default may result in acceleration of the sums secured by the Security Instrument and sale of the property. (*See id.*).

Neither does Tablada's conclusory claim that "additional charges, other than the monthly payment due, are only permitted to be demanded in order to reinstate the mortgage after

- 10-

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                      1:25-cv-00284

acceleration[]" have any legal significance because they are authorized by the Mortgage contract. (*See U.S. Bank Nat'l Assn as Tr. for Residential Asset Securities Corp. v. Torres*, 559 F.Supp.3d 62, 66 (D.R.I. Sept 13, 2021); *Mot. for Temporary Restraining Order*, ¶ 84). Indeed, "[t]he holding of *Woel* *** is limited to finding a Default Notice invalid because it failed to explicitly include a "right to reinstate." (*Torres*, 559 F.Supp.3d at 66)*.* In the Mortgage, Tablada agreed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (*See* ECF 5-3 at 4, ¶ 1). The Mortgage further requires Tablada to "pay funds for Escrow Items pursuant to Section 3." (*See id.*, at 5, ¶ 3). The event of default also triggers Paragraph 9 of the Mortgage, which Plaintiff "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." (*See id.*, at 8, ¶ 9). This includes property inspection, preservation, and valuation fees, and "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument." (*See id.*) These amounts "shall become additional debt of Borrower secured by this Security Instrument," and "shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." (*See id.*, at 9, ¶ 9). Therefore, Tablada's has not met his burden to establish a reasonable likelihood of success on the merits for his breach of contract claim.

5. **Tablada has not provided any plausible evidence that the recording of the foreclosure deed would cause irreparable harm because the foreclosure sale took place approximately five months ago**.

The foreclosure sale was conducted on January 24, 2025, so there is no irreparable harm to Tablada. Rhode Island follows the so-called gavel rule, which cuts off a borrower's right to redeem the mortgage when the property is sold at foreclosure auction. (*See In re Medaglia*, 402 B.R. 530, 532-533 (Bankr. DRI 2009); *see also* R.I. Gen. Laws § 34-11-22 (2008) ("... which sale or sales .

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                                                                   1:25-cv-00284

. . shall forever be a perpetual bar against the mortgagor."); *Holden v. Salvadore*, 964 A.2d 508, 516 (R.I. 2009) (the defendant lacked the power to prevent or postpone the foreclosure sale because the sale had already taken place)). Here, Tablada's equity of redemption was perpetually foreclosed when the Property was sold at the public auction on January 24, 2025. (*See Id.*). Therefore, Tablada cannot prove that he will suffer irreparable harm because his equity of redemption is forever extinguished.

**WHEREFORE,** Rocket Mortgage requests that this Court:

1. Deny Plaintiff's Motion for Preliminary Injunction;

2. Enter an order dissolving the Notice of Lis Pendens (ECF 2) filed with the Town of Richmond Land Evidence Records in Book 375, 693, and declaring the Lis Pendens is null and void; and

3. Dismiss Plaintiff's Complaint for Failure to State a Claim, pursuant to Rule 12(b)(6).

Respectfully submitted by,
DEFENDANT,
Rocket Mortgage, LLC,
By their Attorneys,

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)
Broc and Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA 02762
Tel: (508) 379-4516
Email: rowdy.cloud@brockandscott.com

Dated: June 25, 2025

Def's Opp'n to Pl's Mot. for Prelim. Inj.                                                                                                    1:25-cv-00284

## CERTIFICATE OF SERVICE

      I hereby certify that, on the 25th day of June 2025, I caused a copy of the foregoing document to be filed and served via the ECF system on the parties registered to receive electronic service in this matter. I further certify that a copy of said document to be served via electronic mail to:

John B. Ennis
Jbelaw75@gmail.com

The document electronically filed is available for viewing and/or downloading form the ECF system.

                                */s/ Rowdy M. Cloud*
                                Rowdy M. Cloud, Esq. (#9383)

- 13-

Def's Opp'n to Pl's Mot. for Prelim. Inj.　　　　　　　　　　　　　　　　　　　　1:25-cv-00284