UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AMERRISQUE TABLADA

      VS                                  1:25-CV-00284

ROCKET MORTGAGE, LLV
SEVEN DEUCE, LLC
GINNIE MAE II

MOTION TO STRIKE AFFIDAVIT OF

     This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction on July 8, 2025. The Plaintiff in support of this Motion served a Subpoena Duces Tecum on the Rhode Island Agent for Service of Process for Rocket Mortgage, LLC. This subpoena duces tecum was not served in conjunction with a FRCP 30(b)(6) Notice of Deposition. It only sought certain documents from the Keeper of the Records of Rocket Mortgage, LLC. An analysis of Defendant's Motion indicates that this motion is not well grounded in fact or law.

     This subpoena was served by Plaintiff's attorney on the agent for Service of Process, CT Corporation System. Pursuant to FRCP 45, any person over 18 years of age and not a party may serve a subpoena. Plaintiff's attorney is not a party to this case and is over 18 years of age. Thus there is no basis for this objection.

     The purpose of an agent for service of process is to provide that the corporate entity may be served in a state in which it does business. Rocket

1

Mortgage, LLC has designated CT Corporation as its agent for service of process, in Rhode Island  a authorized by the Rhode Island Limited Liability Company Act, which provides in R.I.G.L. § 7-16-11:

   Resident agent.

   **(a)** Each domestic or foreign registered limited liability company shall have a resident agent for service of process on the limited liability company who shall be either:

   **(1)** An individual resident of this state; or

   **(2)** A corporation, limited partnership, or limited liability company, and in each case either domestic or one authorized to transact business in this state.

   Rocket Mortgage is a Limited Liability Company organized under

   The Federal Rules permit service on Rocket Mortgage, through it agent for service of process. Otherwise an entity could do business in the State of Rhode Island and never be able to be served with a Federal Court subpoena  on its agent in Rhode Island.

In *First City, Texas – Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002), the Second Circuit affirmed a district court holding that service was valid under the parties' agreement and Rule 45 when the subpoena had been left in a conspicuous place at the bank's agent's place of business. The case established that this manner of service – which did not involve personal delivery, but did involve 'delivery' satisfied the requirements of Rule 45.

FRCP 5(f) permits delivery of certain discovery papers to agents for service of process:

(F) delivering it by any other means that the person consented to in writing—in which event service is complete when the person making service delivers it to the agency designated to make delivery.

Defendant has not cited any case which precludes the service on an agent for service of process. Rule 4 permits summonses to be served on parties through their agents for service of process. Here Rocket Mortgage is a party doing business in Rhode Island as a lender and as a Third Party loan servicer and has designated CT Corporation Systems as its agent to accept service in Rhode Island.

The subpoena was served due to the fact that Defendant filed an affidavit which did not include the servicing file or any evidence that Rocket Mortgage complied with the FHA Guidelines. This affidavit was not notarized and merely

3

contained a spreadsheet of the loan transactions which is not the original life of the Loan transactional history on Rocket Mortgage's electronic system of record. Rocket Mortgage utilizes MSP Loan Sphere a particular system of record, which it must maintain pursuant to the provisions of RESPA and Regulation X and the interpretations of Regulation X (12 C.F.R. 1024.35. 1024.36 and 1024.38 and 1024.39) Regulation X and the commentary for the Consumer Financial Protection Burean Corporations provide that a servicing file must contain certain documents including the life of the loan transactional history:

Paragraph 38(c)(2)(iv).

1. Report of data fields. A report of the data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices means a report listing the relevant data fields by name, populated with any specific data relating to the borrower's mortgage loan account. Examples of data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices include fields used to identify the terms of the borrower's mortgage loan, fields used to identify the occurrence of automated or manual collection calls, fields reflecting the evaluation of a borrower for a loss mitigation option, fields used to identify the owner or assignee of a mortgage loan, and any credit reporting history.

The servicing file is particularly defined as follows by 12 C.F.R. 1024.38, which defines what must be contained in the servicing file:

38(c)(2) Servicing file.

1. **Timing.** A servicer complies with § 1024.38(c)(2) if it maintains information in a manner that facilitates compliance with § 1024.38(c)(2) beginning on or after January 10, 2014. A servicer is not required to comply with § 1024.38(c)(2) with respect to information created prior to January 10, 2014. For example, if a mortgage loan was originated on January 1, 2013, a servicer is not required by § 1024.38(c)(2) to maintain information regarding transactions credited or debited to that mortgage loan account in any particular manner for payments made prior to January 10, 2014. However, for payments made on or after January 10, 2014, a servicer must maintain such information in a manner that facilitates compiling such information into a servicing file within five days.

2. **Borrower requests for servicing file.** Section 1024.38(c)(2) does not confer upon any borrower an independent right to access information contained in the servicing file. Upon receipt of a borrower's request for a servicing file, a servicer shall provide the borrower with a copy of the information contained in the servicing file for the borrower's mortgage loan, subject to the procedures and limitations set forth in § 1024.36.

Paragraph 38(c)(2)(iv).

1. **Report of data fields.** A report of the data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices means a report listing the relevant data fields by name, populated with any specific data relating to the borrower's mortgage loan account. Examples of data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices include fields used to identify the terms of the borrower's mortgage loan, fields used to identify the occurrence of automated or manual collection calls, fields reflecting the evaluation of a borrower for a loss mitigation option, fields used to identify the owner or assignee of a mortgage loan, and any credit reporting history.

Another portion of the subpoena consists of the request for phone calls, which pursuant to Regulation F must be kept and preserved if the calls are made.

This information which is sought in the subpoena clearly can be provided by a click on the keyboard of the Rocket Mortgage employee. These records are maintained electronically and are accessed by employees with codes as they are contained in electronic files maintained in the electronic system of record (MSP) and the servicing file as defined.

The Defendant provided what was referred by its attorney as undefined "Letter Logs" with the Loan number redacted, which document was not a screen shot of the actual documents. There is no definition of Letter ID, redaction of loan number no proof of mailing, no indication that these letters were in fact mailed and no identification of what the code on each purported log reference meant. Notably absent in this so-called compilation was any reference to Loss Mitigation and no reference anywhere in the materials submitted as to any phone calls made in the first 36 days after default or at any other time, nor any identification of any person who made these requests or purportedly prepared any letters.

The Defendant's attorney extrapolated from this "letter log" as did the purported affiant. If this affidavit is permitted and not stricken, the Plaintiff should have access to the actual servicing file and records of all calls and all letters and

purported emails. Notably absent is any reference to phone calls, which acts as a concession that there was no compliance with 12 C.F.R. 1024.39.

If this undocumented affidavit is considered by the Court, the Motion to Quash should be denied so that Plaintiff can have full access to the unredacted servicing file and the entire life of the loan transactional history as well as Rocket Mortgage's documentation to FHA that it complied with all HUD and RESPA loss mitigation regulations. This can be obtained as indicated above by a simple key stroke. If the Defendant needs additional time to produce documents readily available to it, then the hearing on the preliminary injunction matter can be briefly continued to allow Plaintiff access to these crucial documents. Plaintiff has signed an affidavit indicating that no phone calls were made to him at any time. The purported Letter Logs do not specify any phone numbers and all are indexed as occurring at 12:00 AM on various dates. There is no wording for texts or the recipient of the text. Thus this assertion by Plaintiff's attorney, not by an affiant should not be considered by the Court.

The Plaintiff did not seek overly broad material but instead sought actual records which established any compliance with the FHA guidelines. Instead this purported affiant made a unsupported conclusory statement devoid of documents and facts. Plaintiff's subpoena sought to identify any compliance with the FHA and Hud Guidelines and to verify that at the time of the purported foreclosure,

7

Rocket Mortgage did not own the mortgage loan, which had been transferred some time previously to Ginnie Mae II. The suggestion that this constitutes privilege or is confidential or privileged is not supported by Defendant's naked assertion that a transfer of a federally insured loan to a Ginnie Mae. In fact there is a Ginnie Mae Website which provides this information if a party possesses certain information at Ginnie Mae Disclosure website at the following web address:

https://www.ginniemae.gov/investors/investor_search_tools/Pages/DisclosureSearchTools.aspx

With the Cusip number for the pool, the loan can be searched without regard to any confidentiality by anyone on line. This information clearly is not confidential or privileged as Ginnie Mae has a website to search for the information.

For these reasons, the Motion to Quash should be denied.

July 3, 2025                                   AMERRISQUE TABLADA

                                               By his Attorney
                                               /s/ John B. Ennis
                                               JOHN B. ENNIS, ESQ. #2135
                                               1200 Reservoir Avenue
                                               Cranston, RI 02920
                                               (401) 943-9230
                                               Jbelaw75@gmail.com

## CERTIFICATE OF SERVICE

I certify that I served a copy of this Memorandum on all attorneys of record on July 3, 2025 by electronic filing.

/s/ John B. Ennis