**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| AMERRISQUE TABLADA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 1:25-CV-00284-MSM-AEM |
| ROCKET MORTGAGE; SEVEN DEUCE, | ) |
| LLC; AND GINNIE MAE II, | ) |
| | ) |
| DEFENDANTS. | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT, ROCKET MORTGAGE, LLC'S MOTION TO DISMISS**

The Defendant, Rocket Mortgage, LLC, submits this memorandum in support of its motion

to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

## I.    INTRODUCTION

The Plaintiff, Amerrisque Tablada's, amended complaint does not contain any plausible

facts to assert a claim for breach of contract against Rocket Mortgage because (1) there is no

contractual obligation to strictly comply with the HUD regulations; (2) the Default Notice dated

August 22, 2024 is strictly compliant with the terms of the Mortgage; (3) the Notice of Sale dated

November 27, 2024 is strictly compliant with R.I.G.L. § 34-27-4; and (4) the complaint does not

adequately allege actual damages to invoke Article III jurisdiction to invoke RESPA violations.

As such, the Amended Complaint should be dismissed because it fails to state a claim upon which

relief can be granted.

## II.    FACTUAL ALLEGATIONS

### A.  Tablada's Mortgage

Mr. Tablada was the former owner and mortgagor of the subject property, 63 West

Shannock Road, Richmond, Rhode Island, and granted the first mortgage dated November 13,

2019 as security for a promissory note in the amount of $278,891.00. (*See* ECF 20-2 – Note; ECF

20-3 – Mortgage). The Mortgage was granted to Mortgage Electronic Registration Systems, Inc. as nominee for Quicken Loans Inc. (*See* ECF 20-3 at 1-2). Thereafter, the Mortgage was subsequently transferred to Rocket Mortgage by recorded assignment of mortgage dated November 9, 2021. (*See* ECF 9-1 – Czartoryski Aff. at ¶ 6). While the Mortgage is insured by the Federal Housing Administration (FHA) as a part of the U.S. Department of Housing and Urban Development (HUD), the Mortgage does not contain any contractual provisions that require compliance with the federal regulations promulgated by HUD. (*See* ECF 9-1 at ¶ 1; *see generally* ECF 20-3).

### B. Tablada's Partial Claim Mortgage

On December 2, 2023, Mr. Tablada granted a Partial Claim Mortgage to HUD in the amount of $54,743.90, which was applied to the loan account to cure a non-payment default that occurred in December 2021. (*See* ECF 9-1 at ¶ 7). The funds are authorized by the National Housing Act, codified under 12 U.S.C. § 1715u, which sets maximum limits to any partial claim "not to exceed an amount equivalent to 30 percent of the unpaid principal balance of the mortgage and any costs that are approved by the Secretary…" (12 U.S.C. § 1715u(b)(2)). The Housing Act explicitly prohibits judicial review of HUD's implementation of these provisions. (12 U.S.C. § 1715u(d)). Likewise, any actions taken in relation to payment of partial claims or for failure to act is statutorily exempted from judicial review. (12 U.S.C. § 1710(a)(2)).

HUD has instituted servicing guidelines under various Mortgagee Letters, defining qualifications for the partial claim funds. Effective May 1, 2024, ML 2024-02 defines a Borrower in imminent default as one who "previously qualified for or used HAF funds to reinstate their Mortgage; *and* attests that they cannot resume their monthly Mortgage Payments." (2024 WL

734495, at *5) [1]. While no income documentation is necessary to qualify, as a critical part of the eligibility review process, the Borrower must "indicate[] they have the ability to make the Borrower's portion of the monthly Mortgage Payment." (*Id.* at *7). Eligibility is further limited "until 36 months after the date the Borrower previously executed Payment Supplement Documents." (*Id.* at *8).[2]

### C. Rocket Mortgage's Foreclosure Sale

Mr. Tablada admits that he defaulted on his monthly payments again on or about May 1, 2024, although he claims that he was entitled to an additional partial claim of $21,762.62 at the time of the default. (*See* ECF 20-1 at 16, ¶¶ 45-46). On August 22, 2024, Rocket Mortgage mailed a contractual Default Notice. (*See* ECF 20-5 – Default Letter). The Default Letter specifies the reason for default is non-payment, provides a specified date of October 11, 2024 to cure the default by making payment of $8,411.30 plus any additional charges, and that failure to cure may result in acceleration and sale of the Subject Property. (*See id.*). Thereafter, from May 22, 2024 to January 9, 2025, Rocket Mortgage mailed periodic letters, each advising Mr. Tablada of his options to apply for loss mitigation. (*See id.*, ¶ 11, Ex. H). The Default Notice also states that Mr. Tablada has the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale, as proscribed by the terms of the Mortgage. (*See id.*).

Mr. Tablada does not allege that he ever contacted Rocket Mortgage to request loss mitigation or to cure the default. (*See generally* ECF 20-1). On November 27, 2024, Rocket Mortgage, through its counsel, mailed a notice of foreclosure sale, scheduling a public auction for

---

[1] The guidelines delay implementation of ML 2024-02 to "no later than January 1, 2025." (*Id.*).
[2] The guidelines define a "Payment Supplement" as "a non-interest bearing Note, Subordinate Mortgage, and a Payment Supplement Agreement, which is a rider to and is incorporated by reference into the Payment Supplement promissory Note, given in favor of the Secretary." (*Id.* at *7).

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                    C.A. No. 1:25-cv-00284-MSM-AEM

January 24, 2025 at 1:00 P.M. (*See* ECF 20-4 – Notice of Sale). Notice of the Foreclosure Sale was published for three successive weeks, January 2nd, 9th, and 16th, leading up to the sale date. (*See* ECF 9-2 – Torres Aff., ¶ 9, Ex. 2 - Publications). After competitive bidding at the auction sale, conducted by the Firm's licensed auctioneer, the Subject Property was sold for $329,000.00 to a third party, Benjamin Ricci. (*See id.*, ¶ 11-12). Mr. Ricci subsequently refused to honor his bid after his counsel advised that he would not close on the sale due to the Borrower's threats of litigation. (*See id.*, ¶ 13). As a result, the Firm contracted with the next highest, willing bidder, Seven Deuce, LLC, for its bid of $300,000.00. (*See id.*, ¶ 15).

**D. Tablada's Alleged Notices of Error**

Following the sale, Mr. Tablada, with assistance of counsel, mailed a notice of error, alleging essentially the same broad claims: (1) failure to comply with HUD Regulations and FHA Guidelines; (2) non-compliance with the mortgage terms; (3) failure to comply with R.I.G.L. § 34-27-4; (4) Failure to comply with federal regulation 12 C.F.R. §1024.41 of the Real Estate Settlement Practices Act (RESPA); (5) that the Note has never been endorsed; (6) that Rocket Mortgage is not the actual mortgagee; (7) that the loan has not been accelerated; and (8) that Mr. Tablada was entitled to a second partial claim mortgage. (*See* ECF 20-7). In response, Rocket Mortgage mailed a letter dated February 26, 2025 advising that Mr. Tablada had already executed a partial claim loan modification, Rocket Mortgage had made "numerous attempts to contact Mr. Tablada to discuss his delinquent loan status, and other potential loss mitigation options he may qualify for, [but Rocket Mortgage] did not receive any request from Mr. Tablada following his previous partial claim modification and prior to his foreclosure sale, to review his account for an additional partial claim." (ECF 20-9).

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                    C.A. No. 1:25-cv-00284-MSM-AEM

A request for information dated February 19th (ECF 20-10 at 16-23) was responded to on March 3rd (ECF 20-10 at 11), asserting that the request was duplicative of the initial notice of error. A second notice of error dated March 5, 2025 asserts errors in the February 27th and March 3rd response letters and demands a laundry list of documentation. (ECF 20-10 at 3-9). A third response letter dated April 17, 2025 reasserts its finding of no errors. (ECF 20-13). A third notice of error dated May 13, 2025 simply reasserts the previous claims that Rocket Mortgage did not address the previous requests for information. (ECF 20-14). A fourth response letter dated June 9, 2025 again asserts a finding of no errors. (ECF 20-17).

### E. Tablada's Complaint

Mr. Tablada's 50-page Amended Complaint ironically contains very few factual allegations, instead mostly relying on conclusory allegations of law and "copy and paste" segments of regulatory provisions. The Amended Complaint begins by describing Mr. Tablada's Mortgage. (*See* ECF 20-1 – Am. Compl. at 1-2, ¶¶ 1-3, 6-8).[3] Mr. Tablada alleges without any evidence that "[Rocket Mortgage] has never owned the Plaintiff's mortgage loan or note[,]" despite previously admitting the existence of a duly executed assignment from MERS to Rocket Mortgage. (*See id.* at 3, ¶ 9). Mr. Tablada goes on to allege without evidence that the Mortgage is owned by the Government National Mortgage Association (Ginnie Mae) as part of a transfer "[s]hortly after November 13, 2019" involving a mortgage-backed securities (MBS) pool of loans. (*See id.* at 3-5, ¶¶ 10-26). While the Amended Complaint alleges that Rocket Mortgage is obligated to comply

---

[3] The Amended Complaint restarts the paragraph numbers at 6, 4, 5, 6… (*See* ECF 20-1 at 2). The only other misnumbering errors occurs at paragraph 108, which is labeled 118 (*See id.* at 26); paragraph 129 is labeled as 198 and restarts at 129. (*See id.* at 32); paragraph 139 restarts at 136 (*See id.* at 34); paragraph 161 is subsequently followed by another 161 (*See id.* at 39-40); paragraph 185 is followed by 187 so that there is no 186 (*See id.* at 43-45); paragraph 201 is instead labelled 2021 (*See id.* at 47). For clarity, Rocket Mortgage will list the page number and the paragraph number as written in the Amended Complaint when referencing this pleading.

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                           C.A. No. 1:25-cv-00284-MSM-AEM

with all HUD regulations as a condition of FHA, HUD and/or Ginnie Mae's agreement insuring this loan, Mr. Tablada cannot point to any contractual terms in the Mortgage. (*See id.* at 5, ¶ 27).

**<u>Counts I & II: Breach of Contract and Injunctive Relief</u>**

First, the Amended Complaint generally alleges breach of contract for Rocket Mortgage's failure to strictly comply with the terms of the Mortgage. The Complaint alleges that Rocket Mortgage did not conduct a "face-to-face meeting" as promulgated in 24 C.F.R. § 203.604(b). (*See id.* at 17, ¶¶ 49-50). It also claims that Rocket Mortgage never made any phone calls to the borrower, citing 12 C.F.R. § 1024.39. (*See id.* at17-18, ¶¶ 51-55). It also asserts 12 C.F.R. § 1024.41(f)(1), alleging that the default of May 1, 2024 was not 120 days delinquent when the Default Notice was mailed. (*See id.* at 23, ¶¶ 92-94). Although these alleged violations stem from regulatory authority, Mr. Tablada claims that failure to strictly comply with the regulations is equivalent to a breach of contract. (*See id.* at 18, ¶¶ 56-57).

The Complaint then alleges that the Notice of Sale is deficient under R.I.G.L. § 34-27-4 because it was not signed, it was mailed by the law firm's mail vendor, MailPro Solutions, and it was mailed by certified mail electronic receipt requested. (*See id.* at 19-20, ¶¶ 58-69). It also asserts that the Default Notice is deficient because it was mailed by Rocket Mortgage's mail vendor, Covius Print Ready Services. (*See id.* at 21, ¶¶ 75-79). Mr. Tablada claims that the Default Notice is deficient because it contains late charges of $300.18, an unspecified charge of $25.00, and corporate advance balance of $177.78. (*See id.* at 21-22, ¶¶ 80-84). Mr. Tablada asserts a right to injunctive relief restraining the transfer of the Property by foreclosure deed to the Third Party Buyer, which has been denied by this Court. (*See id.*, 27-28, ¶¶ 110-113).

**Counts III-V: RESPA Violations**

As an alternative theory, Mr. Tablada asserts a separate count under RESPA for the alleged notices of error and request for information. (*See id.* at 29, 32-34, 38-41, 45-47 ¶¶ 115, 128-131, 133, 135-138, 153-160, 161-169, 187-200). The Amended Complaint vaguely alludes to the existence of errors on the account and Rocket Mortgage's failure to correct or investigate the errors. (*See id.*). Instead, the Complaint alleges, Rocket Mortgage "ignored the errors asserted in its letter dated February 26,2025 [sic] (Exhibit 3)." (*See id.* at 34, ¶ 136). Likewise, the Complaint alleges that Rocket Mortgage ignored the request for information dated February 19, 2025 and subsequent notices of error. (*See id.* at 41, 47, ¶¶ 169, 200). Mr. Tablada alleges, without any evidence, that Rocket Mortgage "has exhibited a pattern and practice of failing to comply with the Regulations as it failed to comply with multiple notices of error." (*See id.* at 35, ¶ 137; *see also id.* at 41, ¶ 171). These alleged violations may have resulted in legal fees and actual damages to Mr. Tablada allegedly comprising of: loss of equity in the home, filing costs, gasoline in visiting his attorney, mileage costs, electricity to recharge his cellular phone, postage and copying costs, time spent away from his normal activities, and emotional distress. (*See id.* at 35-36, 42-43, 47-49 ¶¶ 139-148, 175-184, 204-213).

### III.    STANDARD OF REVIEW

When reviewing a motion to dismiss for failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes "the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To avoid dismissal, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Garcia-Catalan v. U.S.*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). Although the

plaintiff does not need to show a likelihood of success, their complaint must supply "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 102-03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus to achieve this, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A deficient complaint should be dismissed "when a plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face.' " *Lister v. Bank of America, N.A.*, 8 F.Supp 3d 74, 78 (D.R.I. March 28, 2014) (quoting *Twombly*, 550 U.S. at 570).

## IV.    ARGUMENT

Here, the Amended Complaint should be dismissed because it fails to allege any plausible facts that Rocket Mortgage committed breach of contract or violated RESPA. Neither does Plaintiff have standing to support their federal claims because they fail to sufficiently plead actual damages to invoke Article III jurisdiction. For these reasons, Plaintiffs' complaint must be dismissed for failure to state a claim upon which relief may be granted.

**1. The Amended Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Mortgage does not contain any contractual provision that requires compliance with HUD regulations.**

The Amended Complaint does not plead any plausible facts creating a contractual obligation with Mr. Tablada to strictly comply with HUD regulations. (*See Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-136 WES, 2018WL 1083581 (D.R.I. Feb. 27, 2018)). Unlike the FHA mortgage in *Dan-Harry*, the Mortgage, here, does not contain any express contractual provision that "unambiguously requires compliance with the HUD regulations, including 24 C.F.R. § 203.604(b), as a condition precedent to foreclosure." (*See id.*, at *1; *compare with* ECF 20-3 at 14, ¶ 22). Absent an express contractual provision similar to the paragraph 9(d) of the FHA mortgage,

there is no contractual obligation to strictly comply with the HUD regulations or to offer a loan modification. (*See Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980-81 (R.I. 2017)). Therefore, even taking the factual assertions in the Amended Complaint as true for the purposes of this motion, Rocket Mortgage's alleged noncompliance with the HUD regulations would not give rise to a contractual obligation.

The Amended Complaint does not allege that Mr. Tablada took any action prior to the foreclosure to seek a loss mitigation option. Although he asserts an entitlement to additional partial claims funds, Mr. Tablada does not show why he would be eligible without ever notifying Rocket Mortgage of either his intent to apply for loss mitigation or an attestation of his inability to make payments under the recently modified loan. (ML 2024-02, 2024 WL 734495, at *7). To the contrary, a unilateral modification applying additional partial claims funds would have violated the explicit terms of ML 2024-02. (*See id.*) Neither is it Rocket Mortgage's decision to grant the partial claims mortgage because it requires the authorization of HUD. Per the servicing guidelines, HUD would likely have denied additional partial claim funds because the recent December 2023 Partial Claim Mortgage disqualified him for additional partial claim funds. (*See id.* at *8). Whether Mr. Tablada believes HUD's regulatory provisions to be overburdensome or somehow inapplicable to him is irrelevant because Congress gave HUD the specific authorization to define the eligibility requirements to engage in loss mitigation. (*See* 12 U.S.C. § 1715u(a)).

Likewise, the claim for breach of contract pursuant to 12 C.F.R. § 1024.41 has no merit because the regulations are not made a part of the Mortgage contract. Even if they were, Mr. Tablada's assertion that the default notice must be mailed more than 120 days from the date of default misconstrues the regulatory framework. The relevant regulatory provision states: "A servicer shall not make the first notice or filing required by applicable law for any judicial or non-

9

judicial foreclosure process unless: (i) A borrower's loan obligation is more than 120 days delinquent[.]" (12 C.F.R. § 1024.41(f)(1)). The phrase "first notice or filing" has been further clarified by HUD to mean simply the notice of sale in a nonjudicial foreclosure or the complaint in a judicial foreclosure. (*See id.*, comment 41(f)(1)(i)-(ii)).[4] when the foreclosure procedure under applicable State law does not require a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be recorded or published to initiate the foreclosure process.  HUD clarified this in its 2021 official interpretations:

> As noted in that comment, whether a document is considered the first notice or filing is determined on the basis of foreclosure procedure under the applicable State law. Thus, certain State-mandated documents might be considered the first notice or filing and some might not. To the extent State-mandated documents, such as breach notices or acceleration notices are not the first notice or filing, nothing in this rule prevents servicers from sending them.

(86 FR 34848-01, 2021 WL 2662230, at *34882 (Jun 30, 2021)). Therefore, Mr. Tablada's claims for breach of contract for failure to comply with the HUD regulations under Count I of the Amended Complaint must fail as a matter of law.

2.  **The Amended Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Default Notice dated August 22, 2024 is strictly compliant with the terms of the Mortgage.**

The Rhode Island Supreme Court has held that "[a]s a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale." (*Woel v. Christiana Tr., as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17*, 228 A.3d 339, 345 (R.I. 2020)). More recently, in *Degasparre v. Fay Servicing,*

---

[4] "(i) Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition, order to docket, or notice of hearing). (ii) Where foreclosure procedure does not require an action or court proceeding, such as under a power of sale, a document is considered the first notice or filing if it is the earliest document required to be recorded or published to initiate the foreclosure process." (*Id.*)

10

*LLC*, the Supreme Court distinguished a valid notice in strict compliance with paragraph 22 from the invalid notice in *Woel*. (288 A.3d 146, 153-54 (R.I. 2023)).

Here, the Default Notice mirrors the contractual language contained in paragraph 22 of the Mortgage, including the right to reinstate after acceleration and the right to bring a court action. (*See* ECF 20-5). The Default Notice states that (a) the loan is in default for failure to pay amounts due, (b) to cure the default a payment of $8,411.30 must be made, (c) by October 11, 2024, and (d) failure to cure the default may result in acceleration of the sums secured by the Security Instrument and sale of the property. (*See id.*). The Default Notice also states: "You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." (*See id.*). The language used in the Default Notice unequivocally mirrors the required contractual language contained in paragraph 22 of the Mortgage. (*Compare* ECF 20-3 *with* ECF 20-5). Thus, just as in *Degasparre* the Default Notice, here, satisfies the contractual condition precedent established in *Woel*.

Mr. Tablada's claim that additional charges were added to the total amount to cure the default has no legal relevance because these charges are authorized by the Mortgage contract. (*See U.S. Bank Nat'l Assn as Tr. for Residential Asset Securities Corp. v. Torres*, 559 F.Supp.3d 62, 66 (D.R.I. Sept 13, 2021); ECF 20-1 at 21-22, ¶¶ 80-84). Indeed, "[t]he holding of *Woel* *** is limited to finding a Default Notice invalid because it failed to explicitly include a "right to reinstate." (*Torres*, 559 F.Supp.3d at 66). In the Mortgage, Tablada agreed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (*See* ECF 20-3 at 4, ¶ 1). The Mortgage further requires Tablada to "pay funds for Escrow Items pursuant to Section 3." (*See id.*, at 5, ¶ 3). The event of default also triggers Paragraph 9 of the Mortgage, which Plaintiff "may do and pay for whatever is reasonable or

11

appropriate to protect Lender's interest in the Property and rights under this Security Instrument." (*See id.*, at 8, ¶ 9). This includes property inspection, preservation, and valuation fees, and "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument." (*See id.*) These amounts "shall become additional debt of Borrower secured by this Security Instrument," and "shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." (*See id.*, at 9, ¶ 9). There is no contractual provision that requires the notice be mailed by a law firm or any other entity. Therefore, this Court should dismiss Mr. Tablada's claim of breach of contract for lack of strict compliance in the Default Notice under Count I.

**3. The Amended Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Notice of Sale dated November 27, 2024 is strictly compliant with R.I.G.L. § 34-27-4.**

Rhode Island General Laws § 34-27-4(b) requires that notice of sale to an individual consumer mortgagor be mailed within thirty days "by certified mail return receipt requested at the address of the real estate and, if different, at the mortgagor's address listed with the tax assessor's office …" Subsection (a) of the statute also provides that notice of the sale be published for three successive weeks prior to the sale, with the first publication being at least 21 days prior to the sale, and the third publication being no fewer than 7 days prior to the sale but no more than 14 days prior to the sale.

Here, Mr. Tablada does not allege any plausible facts that would establish noncompliance under the statute. The Amended Complaint merely alleges that the Notice of Sale was not mailed by the law firm but instead mailed by its mail vendor. (*See* ECF 20-1 at 19-20, ¶¶ 58-69). Nothing in the statute disqualifies mailing by the mortgagee's agent, counsel, or a mail vendor. Neither is mailing by electronic receipt requested any different from mailing a physical green card.

The undisputed facts indicate that the Notice of Sale was mailed on November 27th, which was 36 days prior to the first publication that ran on January 2, 2025 in compliance with subsection (b). (*See Torres Aff.*, ¶ 7-9, Ex. 1-2). Publications ran two additional weeks, January 9th and 16th, leading up to the public auction sale held on January 24th, an eight-day period separating the third publication and the sale date. (*See Torres Aff.*, ¶ 9). Likewise, the Amended Complaint does not allege any plausible facts that the publications were outside of the timelines provided in subsection (a) of the statute. As a result, this Court should dismiss Count I because the Amended Complaint does not allege any plausible facts to assert a claim for breach of contract for failure to strictly comply with R.I.G.L. § 34-27-4 under Count I.

**4. Plaintiff lacks standing to support their RESPA claims because they have not adequately alleged actual damages to invoke Article III jurisdiction.**

The Amended Complaint does not assert any plausible facts to support a RESPA claim. Although RESPA establishes specific procedures for communication between borrowers and mortgage loan servicers, to establish a right to recover the borrower must show that the servicer failed to complied with these requirements and that the borrower suffered actual damages caused by the violation. (*See O'Connor v. Nantucket Bank*, 992 F.Supp.2d 24, 35 (D. Mass. 2014)). This requires the borrower to establish a "casual link" between the alleged violation and the damages. (*See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11thCir. 2016).

Here, the Amended Complaint does not sufficiently plead actual damages to invoke Article III jurisdiction. In order to invoke Article III jurisdiction, the Plaintiff must adequately plead actual damages. (*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016)). This Court has consistently held that conclusory assertions that the lender failed to address any of the issues raised in the notice of error does not plausibly explain the alleged violation. (*See Fitch v. Fed. Hous. Finance Agency*, C.A. No. 18-cv-214JJM, 2021 WL 4901909, at *7 (Oct. 21, 2021) (R&R adopted Jan. 18, 2022,

2022 WL 159287); *Lebeau v. U.S. Bank, N.A. as Tr. for Citigroup Mortg. Loan Trsut, Inc.*, C.A. 17-329-JJM-PAS, 2019 WL 1077285, at *4 (D.R.I. Mar. 7, 2019) (RESPA complaint based on servicer's invocation of overbreadth and burden that failed to allege specific issue of concern fails plausibly to allege violation); *Colesanti v. Becton Dickinson*, C.A. No. 18-491WES, 2019 WL 4043957, at *9 (D.R.I. Agu. 27, 2019) (when exhibits attached to complaint contradict allegations in complaint, exhibits govern)).

Just as in *Fitch*, the Amended Complaint fails to assert any actual injury that plausibly flows from the alleged violation to invoke standing. (*See* 2021 WL 4901909, at *7). Not only are the alleged damages speculative in nature, but they would have already occurred by the time Rocket Mortgage sent its allegedly noncompliant response on February 26th. "For starters, the expenses associated with visiting and talking with his attorney, the postage, copying and other expenses preparing and mailing [the notice of error] and the fees and costs associated with the foreclosure … are not plausibly traceable to an assumed RESPA/Regulation X violation because these losses had already been incurred when [the servicer] provided its allegedly noncompliant response." (*Id.*) "When the fog of confusion arising from the sound and fury [in Plaintiff's RESPA pleading] is blown away, what remains are bare procedural violations, divorced from any concrete harm." (*Id.* at *9) (internal quotations omitted)). Here, Mr. Tablada's alleged damages involving loss of equity in the home, filing costs, gasoline in visiting his attorney, mileage costs, electricity to recharge his cellular phone, postage and copying costs, time spent away from his normal activities, and emotional distress are not plausibly traced to the alleged violation, but rather symptoms of his own inaction and failure to pay the mortgage. For these reasons, this Court should dismiss Counts III-V because the Amended Complaint does not plead any plausible facts to assert Article III standing to invoke a claim under RESPA.

14

## V.  CONCLUSION

Mr. Tablada's Amended Complaint fails to allege any plausible facts to assert a claim for breach of contract against Rocket Mortgage or to invoke Article III standing to invoke RESPA violations. For the foregoing reasons, Rocket Mortgage respectfully requests that this Court dismiss the Amended Complaint and grant such other relief as the Court deems just and proper.

Respectfully submitted by,
**DEFENDANT,**
**Rocket Mortgage LLC,**
By Its Attorneys,

Dated: September 26, 2025

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)
Brock and Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA 02762
Tel: (508) 379-4516
rowdy.cloud@brockandscott.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 26th day of September 2025, I caused a copy of the foregoing document to be filed and served via the ECF system on the parties registered to receive electronic service in this matter. I further certify that a copy of said document to be served via electronic mail to:

John B. Ennis
Jbelaw75@gmail.com

The document electronically filed is available for viewing and/or downloading form the ECF system.

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)

15